UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ANEES KHAN,

                *Plaintiff*,

           -against-

K1 INVESTMENT MANAGEMENT LLC;
TRACKFORCE, INC., *a subsidiary of
Trackforce Top. Co. doing business as*
TRACKFORCE VALIANT,

                *Defendants*.
-------------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
2:24-cv-07860 (JMW)

**A P P E A R A N C E S:**

    Vincent F. Gerbino
    **Bruno Gerbino & Soriano, LLP**
    445 Broad Hallow Road, Suite 220
    Melville, NY 11747
    *Attorney for Plaintiff*

    Saranne Weimer, Esq.
    **S. Weimer Law, LLC**
    101 Crawfords Corner Road
    Holmdel, NJ 07733
    *Attorney for Defendant*s

**WICKS**, Magistrate Judge:

    Plaintiff Anees Khan ("Plaintiff" or "Khan") commenced the underlying action asserting

claims for breach of contract, fraud and conspiracy to commit fraud, unjust enrichment, breach

of the implied covenant of good faith and fair dealing, and violations of the New York State

Wage Prevention Act against Defendant K1 Investment Management LLC ("K1") and

Trackforce, Inc. ("Trackforce") (collectively "Defendants") to collect upon the unpaid

commissions Plaintiff contends he was owed under the terms of the parties' Commission

Agreement. (*See generally* ECF Nos. 1, 19.)

1

The parties are now before the Court on Defendant Trackforce's motion to amend its Answer to assert counterclaims against Plaintiff for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and unjust enrichment as a result of Plaintiff's alleged engagement in "side deals" in violation of the parties' Commission Agreement and pattern of falsifying information on Plaintiff's contracts to inflate the amount of commissions paid to him. (*See* ECF No. 33.) For the reasons stated below, Defendant Trackforce's motion (ECF No. 33) is **GRANTED in part** and **DENIED in part**.

## FACTUAL BACKGROUND

Plaintiff commenced this action on November 12, 2024 seeking damages for the harm he allegedly suffered after Defendants supposedly failed to pay Plaintiff his owed commissions under the parties' Commission Agreement. (ECF No. 19 at ¶¶ 6, 17.) Plaintiff "worked in sales" for Defendants and was paid a salary and commissions pursuant to a written Commission Agreement, a document detailing how an employee's commission is calculated. (*Id.* at ¶¶ 6-7.)

On August 5, 2024, Defendants' Chief Revenue Officer, Chris Schwartz ("Schwartz") supposedly changed the Sales Commission Plan unilaterally—a change that Plaintiff neither signed nor agreed to. (*See id.* at ¶ 8.) Plaintiff maintains that Schwartz met with Human Resources Vice President Joanne Kiamos and drafted a new Commission Agreement, which Plaintiff argues he never agreed to. (*Id.* at ¶¶ 8, 26-28.) Plaintiff posits that Schwartz and Kiamos intended to use the new agreement to avoid paying Plaintiff's commissions and the commissions of other individuals similarly situated, and that they planned to terminate Plaintiff before paying his commissions. (*Id.* at ¶¶ 27-28, 37.) Indeed, Plaintiff avers that each time an earnings schedule was amended or changed, Defendants were required to, but did not, have Plaintiff and similarly situated employees sign that amendment. (*Id.* at ¶ 15.)

As Plaintiff contends, after seeing the commissions owed to Plaintiff in arrears, Defendants terminated Plaintiff on September 5, 2024 after Plaintiff complained about the commissions not being paid. (*Id.* at ¶¶ 8, 17.) Further, Plaintiff avers that Schwartz reassigned him to a new manager, Kyell Venick, and that Venick told Plaintiff the reassignment was specifically done for purposes of terminating Plaintiff. (*Id.* at ¶ 19.) Following his termination, Plaintiff demanded all commissions earned within five business days of termination be remitted in accordance with his statutory rights, but Defendants declined. (*Id.* at ¶¶ 11, 14, 34.) Similarly, despite Kiamos, and former head of finance, Don Clay ("Clay"), advising Schwartz that commissions must be paid in accordance with the agreed upon commission schedule and the law, no payments were made. (*See id.* at ¶ 16.)

Plaintiff contends that Defendants were aware of their legal duty to pay Plaintiff. (*Id.* at ¶¶ 16, 38.) Additionally, though Plaintiff contends that Defendants were obligated to inform him of changes in payment plans and to maintain compensation records for six or more years, Defendants did neither. (*Id.* at ¶ 15.) Plaintiff avers that the termination letter Defendants sent indicated that Defendants falsely claimed they owed Plaintiff only $1,255.61 in commissions, while Plaintiff argues he is owed $103,278.30, subject to doubling under NY Labor Law, for a total of $206,556.60. (*Id.* at ¶¶ 13, 29.) Accordingly, Plaintiff alleges six causes of action: (i) breach of contract; (ii) fraud and conspiracy to commit fraud; (iii) unjust enrichment; (iv) breach of the implied covenant of good faith and fair dealing; (v) additional count of fraud and conspiracy to commit fraud; and (vi) violations of the New York State Wage Theft Prevention Act under N.Y. Labor Law § 198. (*See id.* at pp. 4-8.)

## PROCEDURAL BACKGROUND[1]

The original Complaint, filed on November 12, 2024, was subsequently amended on February 7, 2025. (*See generally* ECF Nos. 1, 19.) The Amended Complaint kept substantially the same allegations as the original, but merely added an additional cause of action for Defendants' purported violations of the New York State Wage Theft Prevention Act, namely, that Defendants amended the time earnings schedule without notice and without maintaining records for six years. (ECF No. 19 at p. 8.) Following an Initial Conference on February 28, 2025, the undersigned issued a Scheduling Order setting, *inter alia*, April 21, 2025 as the deadline for the parties to file motions to amend the pleadings or join new parties. (*See* ECF No. 26 at p. 2.) Defendants filed an Answer to Plaintiff's Amended Complaint on March 14, 2025. (*See* ECF No. 7.) On April 21, 2025, Defendant Trackforce filed a motion to amend its Answer to the Amended Complaint to assert counterclaims against Plaintiff (ECF Nos. 33 and 35), which Plaintiff opposed. (ECF No. 34.)

## THE LEGAL FRAMEWORK

Motions to amend pleadings are governed by the Federal Rule of Civil Procedure 15(a). Pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave when justice so requires." Generally, "[u]nless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Commc'ns Co.*, *Inc. v. Best Yet Mkt., Inc.*, No. 17-CV-02987 (ADS) (ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

The party opposing the proposed amended pleading has the burden of establishing that amendment would be prejudicial or futile. *Jipeng Du v. Wan Sang Chow*, No. 18-CV-01692

---

[1] On March 28, 2025, the parties consented to jurisdiction by the undersigned for all purposes. (*See* ECF Nos. 29, 30.)

(ADS) (AKT), 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019). However, the burden to explain the delay rests with the movant. *Pilkington N. Am., Inc. v. Misui Sumitomo Ins. Co. of Am.*, No. 18 Civ. 8152 (JFK), 2021 WL 4991422, at *5 (S.D.N.Y. Oct. 27, 2021). The moving party must attach the proposed amended complaint to the motion, as was done here, specifying the new claims and/or parties intended to be added. (*See* ECF No. 33-3 (indicating the proposed amendments in tracked changes)); *Ghaly v. Nissan Motor Acceptance Corp.*, No. 21-cv-01613 (JS) (JMW), 2021 WL 2550389, at *1 (E.D.N.Y. June 22, 2021).

Where, as here, a defendant seeks to amend its answer to assert counterclaims, courts will evaluate the motion under Rule 15's mandates. *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 100 (2d Cir. 2019) (noting that when presenting a new counterclaim as part of amending an answer, the court will consider the application under Rule 15); *see also Fossil Grp., Inc. v. Angel Sellers LLC*, No. 20-CV-2441 (WFK) (TAM), 2021 WL 5409605, at *8 (E.D.N.Y. Aug. 27, 2021) (analyzing defendant's individual counterclaims it sought to amend its answer to include under Rule 15's futility and prejudice standards). Indeed, when evaluating a the merits of a motion to amend an answer, courts need not consider Rule 13's distinction between permissive and compulsory counterclaims. *See GEOMC Co*, 918 F.3d at 100, n.11 (noting that while evaluating a motion to amend to add new counterclaims there was "no need to consider Rule 13's distinction between compulsory and permissive counterclaims"); *see also* Fed. R. Civ. P. 15 advisory committee's note to 2009 amendment (indicating "[a]brogation of Rule 13(f) establishes Rule 15 as the sole rule governing amendment of a pleading to add a counterclaim"); *see also* Fed. R. Civ. P. 13 advisory committee's note to 2009 amendment (stating that "[a]n amendment to add a counterclaim will be governed by Rule 15"); *see also Ramsay-Nobles v. Keyser*, No. 16 CIV. 5778 (CM), 2018 WL 6985228, at *3 (S.D.N.Y. Dec. 18, 2018) (finding that the

5

"Committee made it very clear that Rule 15 is intended to govern whether a counterclaim can be added to an amended pleading").

Under Rule 15—which applies here since the motion to amend was filed before the deadline to amend—"the court should grant such leave 'freely… when justice so requires' pursuant to Rule 15(a)(2). This is a 'liberal' and 'permissive' standard, and the only 'grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'" *Sacerdote v. NYU*, 9 F.4th 95, 115 (2d Cir. 2021) (citations omitted); *see also Reyes v. Yager Esthetics Estetica*, No. 24-cv-3206 (JGK) (VF), 2025 WL 1156761, at *2 (S.D.N.Y. Apr. 21, 2025) ("Rule 16, however, does not apply here because Plaintiff filed his motion within the deadline set by the Court's scheduling order) (referencing *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 147-48 (S.D.N.Y. 2012) (determining that where a motion to amend "is timely filed, only Rule 15's liberal standard governs")).

## DISCUSSION

Defendant Trackforce seeks leave to amend its Answer to the Amended Complaint to assert four counterclaims for: (i) breach of contract, (ii) breach of the implied covenant of good faith and fair dealing, (iii) fraud, and (iv) unjust enrichment. (*See* ECF No. 33; *see also* ECF No. 33-3.) Trackforce argues that such amendments were "made timely and in good faith and with allegations sufficient to withstand a Motion to Dismiss," based on "information uncovered during discovery," and would result in "no prejudice to Plaintiff." (ECF No. 33-1 at p. 3.) Plaintiff rebuts[2] that Defendant's motion is a "misuse of the litigation pleadings to thwart a legitimate contract action" and such counterclaims would be futile. (*See* ECF No. 34 at pp. 4-5.)

---

[2] A significant portion of Plaintiff's argument centers around how Defendant Trackforce's motion should be decided under Rule 13 and that Rule 15 does not apply to the instant application. (*See* ECF No. 34 at

Defendant specifically seeks to include information relating to Plaintiff's "pattern or practice of falsifying" the number of employees and locations in the contracts that he was entering into with clients through "side deals" for the use of certain payroll software—criteria crucial for establishing the Annual Recurring Revenue ("ARR") which in turn determined how much commission on a particular contract Defendant was required to pay to Plaintiff under the Commission Agreement. (ECF No. 33-3 at ¶¶ 5-11.) Indeed, Defendant contends that Plaintiff entered into these "side deals" for the purpose of not actually having customers pay the amounts on the contract that Plaintiff went to Trackforce with and sought commissions based on the artificially inflated contract value. (*See id.* at ¶¶ 12, 18, 23.)

### i.    <u>Undue Delay</u>

"Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citation omitted); *see also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (emphasizing prejudice and bad faith over delay). Although mere delay is insufficient to deny a motion to amend, the moving party has the burden to "provide satisfactory explanation for the delay." *United States v. Inc. Village of Island Park*, No. CV-90-0992, 1995 WL 669936, at *1 (E.D.N.Y. Nov. 6, 1995). Ordinarily, where the moving party's fails to provide a detailed explanation as to why the proposed amendments could not have been alleged previously, a court will assume there was undue delay. *Perez v. Escobar Construction, Inc.*, 342 F.R.D. 378, 381-82 (S.D.N.Y. Nov. 29, 2022).

---

pp. 2-4.) Plaintiff is misguided in this argument, and there is no support in the caselaw. *See* 2009 Advisory Committee Note to Fed. R. Civ. P. 13 ("Deletion of Rule 13(f) ensures that relation back is governed by the tests that apply to all other pleading amendments"); *see also GEOMC*, 918 F.3d at 100.

Defendant asserts there has been no undue delay because "the factual basis for these claims was discovered after Plaintiff's position was terminated," hence why the claims were not raised previously. (*See* ECF No. 33-1 at p. 6; *see also* ECF No. 35 at p. 6.) Moreover, Defendant maintains that "it [was] factually impossible" for Trackforce to have included the counterclaims in the termination letter because discovery of such claims happened after it was sent. (*Id.*) On the other hand, Plaintiff mischaracterizes undue delay as futility, maintaining the counterclaims are *futile* because they should have been brought up earlier. (ECF No. 34 at p. 5.)

Here, the facts underlying each of the new counterclaims relate in some way to the "side deals" Plaintiff allegedly entered. According to Defendant, Plaintiff entered into eight "bookings for which [Plaintiff] collected a commission while . . . [Plaintiff] knew that the contract amounts would not actually materialize" spanning from September 6, 2022 to January 26, 2024. (ECF No. 33-3 at ¶ 26(a)-(h)). While some of these "bookings" pre-date this action and Defendant's initial Answer, Defendant did not learn of these bookings and side deals until during the current discovery process of Plaintiff's breach of contract claim.

Where the information underlying the proposed amendments was learned of during discovery, and the movant filed its motion to amend shortly thereafter, courts will find no undue delay. *See Friedl v. City of New York*, 210 F.3d 79, 88 (2d Cir. 2000) (remanding to allow leave to amend where, *inter alia*, "there has been no showing of either undue delay, given that the amendment was proposed only after discovery revealed additional relevant facts . . . ."); *see also Enzymotec Ltd v. NBTY, Inc.*, 754 F. Supp. 3d 527, 538 (E.D.N.Y. 2010) (finding the motion to amend timely because plaintiff learned of the alleged breaches of contract during discovery and shortly before filing its motion); *see also SIGN PRO, Inc. v. Town of Southington*, No. 3:23-cv-

651 (SRU), 2025 WL 1753660, at *2 (D. Conn. June 25, 2025) (rejecting a claim of undue delay where "it was the discovery process" that revealed information relevant to the existing claims).

While Defendant's initial Answer was filed on March 14, 2025 (ECF No. 27), Defendant maintains that it is continuing its investigation into if and when additional dealings occurred (*see* ECF No. 33-3 at ¶¶ 26, 29), yet still filed its motion to amend on the deadline set by this Court and only six weeks after discovery began. *See Sea Trade Co. v. FleetBoston Fin. Corp.*, No. 03 CIV. 10254 (JFK), 2006 WL 2786081, at *1 (S.D.N.Y. Sept. 26, 2006) (finding no undue delay because although defendant may have had necessary information to assert its counterclaims at the time of the initial answer, it needed to continue its investigation to verify the basis for its counterclaims and sought to timely amend after); *see also Am. Med. Ass'n v. United Healthcare Corp.*, No. 00-CIV-2800 (LMM), 2006 WL 3833440, at *2, *4 (S.D.N.Y. Dec. 29, 2006) (holding no undue delay existed where the basis for the proposed amendments "was formed, at least in part, during Stage One discovery" and the motion to amend was filed "after learning the facts that underlie[d]" the proposed claims).

Accordingly, no undue delay exists.

**ii.    Bad Faith**

"While not much case law exists in this Circuit about what constitutes bad faith for the purposes of denying a motion for leave to amend a pleading, a finding that a party is seeking leave to amend solely to gain a tactical advantage supports a finding that such an amendment is made in bad faith." *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388 (JFB) (SIL), 2017 WL 3841841, at *5 (E.D.N.Y. Aug. 4, 2017), *report and recommendation adopted*, 2017 WL 3842350 (E.D.N.Y. Aug. 31, 2017) (internal quotation marks omitted) (citation omitted). The burden is on the party opposing the amendment to establish bad faith. *Contrera v. Langer*, 314 F.

Supp. 3d 562, 567 (S.D.N.Y. 2018) ("While the party seeking to amend its pleading must explain any delay, the party opposing the amendment 'bears the burden of showing prejudice, bad faith, and futility of the amendment.'") (citations omitted).

Here, while Defendant states that it brought its motion in good faith (*see* ECF No. 33-5 at p. 3), Plaintiff argues that Defendant's motion is "gamesmanship" and a misuse of the Federal Rules. (*See* ECF No. 34 at p. 5.) Conclusory statements made by the opposing party fall far short of satisfying the burden to establish bad faith sufficient to defeat a motion to amend. *See Jipeng Du. v. Wan Sang Chow*, 18-cv-1692 (ADS) (AKT), 2019 WL 3767536, at *5 (E.D.N.Y. Aug. 9, 2019) (collecting cases illustrating that "a party does not demonstrate that a movant seeks to amend in bad faith with conclusory allegations"). As such, though Plaintiff has not carried its burden in proving that bad faith exists, this does not prevent denying a motion to amend where other factors, like futility, are established. *See 246 Sears Road Realty Corp. v. Exxon Mobil Corp.*, No. 09-CV-00889 (NGG) (JMA), 2012 WL 4174862, at *11, 18 (E.D.N.Y. Sept. 18, 2012). Accordingly, the Court will analyze the remaining Rule 15 factors.

### iii.    Prejudice

Prejudice to the nonmovant is an important factor when determining whether to grant a claimant's leave to amend and is often the "most frequent reason for denying leave to amend." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008). When considering whether the opposing party may be prejudiced, courts consider whether the new claim would: "(1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350; *see Alekperova v. Interfaith Med. Ctr.*, No. 04-CV-202, 2006 WL 8439666, at *4 (E.D.N.Y. Aug. 8, 2006) ("[P]rejudice must take

the form of increasing the non-movant's costs, surprising the non-movant with new allegations or claims, or delaying or prolonging the trial."). "[T]he proper standard is one that balances the length of the delay against the resulting prejudice.... [T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Evans v. Syracuse City Sch. Dist*., 704 F.2d 44, 47 (2d Cir. 1983) (citation omitted).

Defendant maintains that no prejudice exists because this "case is in the early stages of discovery," the "discovery deadline is not until November 21, 2025," and "trial has not been scheduled." (ECF No. 33-1 at p. 3.) As such, Defendant contends Plaintiff will have "ample opportunity" to conduct discovery on these asserted counterclaims. (*Id.*) Plaintiff is silent as to whether the proposed counterclaims are prejudicial.

Here, this case is in its nascent stage of discovery. Indeed, as of the date of Defendant's motion, the only discovery allotted for in the undersigned's Scheduling Order was the exchange of initial disclosures and service of, and responses to, first interrogatories and document demands. (*See* ECF No. 26 at p. 2.) The parties appeared for the Initial Conference on February 28, 2025 (*see* ECF No. 25), the close of all discovery is not until November 21, 2025 (*see* ECF No. 26 at p. 3), and no trial date has been set. Under these circumstances, Plaintiff would not be prejudiced by Defendant Trackforce's proposed counterclaims. *See AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 321, 342 (S.D.N.Y. 2024) (noting plaintiff would not be prejudiced by the addition of defendant's proposed counterclaims where "[t]he parties have not taken depositions, exchanged expert reports, or filed motions for summary judgment. Indeed, based on the parties' most recent joint proposal, fact discovery is scheduled to close six months from the latest of the issuance of an order on the motion currently before the Court . . . ."); *see also Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 176 (S.D.N.Y.

11

2014) (granting defendant's motion to amend after finding no undue prejudice to plaintiff where the case was "relatively early in the discovery process" because, at the time the motion to amend was filed, no depositions were taken, expert reports were not exchanged, no motions for summary judgment were pending, and six months remained in fact discovery).

Moreover, considering Defendant's proposed counterclaims center around Plaintiff's breach of the Commission Agreement—the Agreement which is the basis for Plaintiff's underlying breach of contract cause of action—adding these counterclaims will not significantly expand discovery efforts. *See Ruotolo v. City of N.Y.*, 514 F.3d 184, 192 (2d Cir. 2008) ("Undue prejudice arises when an amendment comes on the eve of trial and would result in new problems of proof."); *see also Blake Marine Grp., LLC v. Frenkel & Co.*, 425 F. Supp. 3d 330, 335 (S.D.N.Y. 2019) (permitting defendant to amend its answer where, *inter alia*, discovery was ongoing, a trial date had not been set, and "any additional discovery that may be required will likely overlap with the discovery that is already underway"); *see also Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 455 (S.D.N.Y. 2016) (determining defendants failed to carry its burden in proving the amendment would unduly prejudice them as the "new claim" substantially overlapped with, and related to, plaintiff's existing claims).

Accordingly, because Plaintiff would not be unduly prejudiced by the proposed amendments, this factor weighs in favor of granting Defendant Trackforce's motion.

### iv.    **Futility**

An amendment is futile if the proposed claim could not withstand a motion to dismiss under Fed. R. Civ. P. § 12(b)(6). *IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland PLC*, 783 F.3d 383, 389 (2d Cir. 2015). Similarly, an affirmative defense is considered futile "where it is either clearly 'meritless' based on the well-pleaded

factual allegations contained within the pleadings or would have no impact on the outcome of the action itself." *Tavares v. Lawrence & Mem'l Hosp.*, No. 3:11-CV-770, 2013 WL 1385266, at *3 (D. Conn. Apr. 3, 2013) (citing *Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.*, 403 F. App'x 530, 532–33 (2d Cir. 2010)).

Notably, courts in this Circuit routinely deny motions to amend solely based on futility of the proposed amendments. *See, e.g.*, *6340 NB LLC v. Cap. One, N.A.*, No. 20-CV-02500 (OEM) (JMW), 2024 WL 3694262, at *14 (E.D.N.Y. Mar. 11, 2024) (denying defendant's motion to amend its answer and add counterclaims where "[a]lthough Defendant appears to have overcome the delay and prejudice prongs, the futility factor points in a far different direction"); *Schwasnick v. Fields*, No. 08-CV-4759 (JS) (ARL), 2010 WL 2679935, at *11 (E.D.N.Y. June 30, 2010) ("In this case, there is no evidence of undue delay, bad faith, dilatory motive, or prejudice to Defendant. However, granting leave to amend would be futile because the [pleading], even with further amendments could not survive a 12(b)(6) motion"); *McGrath v. Indus. Waste Techs.*, No. 20 Civ. 2858 (KPF), 2021 WL 791537, at *8 (S.D.N.Y. Feb. 26, 2021) ("[L]eave to amend may independently be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim . . . .").

The party opposing the amendment bears the burden of proving futility. *FC Online Marketing, Inc. v. Burke's Martial Arts*, LLC, No. 14-CV-03685 (SJF) (SIL), 2016 WL 11481193, at *7 (E.D.N.Y. Sept. 30, 2016). As such, when a party objects to a motion to amend on futility grounds, "the moving party must merely show that it has at least colorable grounds for relief." *Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 Civ. 1608, 2010 WL 1327921, at *3 (S.D.N.Y. Apr. 5, 2010) (internal quotation marks omitted).

It is against this backdrop that futility is considered in the context of Defendant's proposed amendments.

    a.  <u>Breach of Contract</u>

To establish a prima facie breach of contract claim and recover damages under New York law, a party must establish that: "(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations . . . ; and (4) defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) (internal citations omitted); *Stonehill Cap. Mgmt. LLC v. Bank of the West*, 68 N.E.3d 683, 689-90 (N.Y. 2016) (reiterating the same factors). To adequately plead a cause of action for breach of contract, a party must identify the provisions of the contract that were breached and offer more than conclusory assertions supporting each of the four elements. *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011).

Here, Defendant Trackforce contends that (i) a contract existed, specifically the Commission Agreement (*see* ECF No. 33-3 at pp. ¶ 32), (ii) Defendant performed on the contract by paying Plaintiff commissions under the Agreement following Plaintiff's sale of payroll software (*see* ECF No. 33-2 at ¶¶ 4-6); (iii) Plaintiff breached its obligation by entering into "side deals," an activity the "Agreement explicitly prohibits" (*see* ECF No. 33-3 at ¶¶ 33-34); and (iv) as a result of these "side deals," Defendant suffered damages resulting from overpaying Plaintiff and not receiving money it should have received on the contracts Plaintiff made. (*See id.* at ¶¶ 27-29, 35.) Indeed, there is sufficient information to infer from Defendant's counterclaim that Plaintiff's alleged pattern of making side deals in breach of the Commission Agreement led to inflated numbers, artificially higher commissions and overpayment, and thus damage to Defendant. (*See* ECF No. 33-3 at ¶¶ 21-22.)

14

As such, Defendant has plausibly pled a breach of contract claim that would withstand a motion to dismiss. *See E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.*, 307 F. Supp. 3d 52, 60-61 (E.D.N.Y. 2018) (Spatt, J.) (granting a motion to amend to add a breach of contract claim where plaintiffs identified the contracts at issue and asserted defendant breached the relevant provisions of the contract, all while providing relevant factual allegations to support their assertions); *see also Margel v. E.G.L. Gem Lab Ltd.*, No. 04 CIV. 1514 (PAC) (HBP), 2010 WL 445192, at *9 (S.D.N.Y. Feb. 8, 2010) (concluding the proposed amendments for breach of contract could state a claim where plaintiffs alleged that an enforceable contract existed, plaintiff performed under the contract, and plaintiff was damaged as a result of the breach).

Accordingly, the breach of contract counterclaim is not futile.

  b.  Unjust Enrichment

A cause of action for unjust enrichment under New York law requires a plaintiff to prove that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (cleaned up) (citation omitted); *Amable v. New School*, 551 F.Supp.3d 299, 317-18 (S.D.N.Y. 2021) (citing *Briarpatch Ltd., L.P. v. Phoenix Picture, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)).

"Notably, '[u]nder New York law, a plaintiff may not recover under quasi-contract claims such as unjust enrichment where an enforceable contract governs the same subject matter.'" *See Shakespeare v. Live Well Fin., Inc.*, No. 18-CV-7299 (JMA) (AYS), 2022 WL 4642736, at *9 (E.D.N.Y. Sept. 30, 2022) (quoting *Goldberg v. Pace University*, 535 F. Supp. 3d 180, 198 (S.D.N.Y. 2021)); *see also Stanley v. Direct Energy Services, LLC*, 466 F. Supp. 3d 415, 430 (S.D.N.Y. 2020) (collecting cases where the existence of a valid contract precludes a claim of

unjust enrichment). This is because a quasi-contractual claim, like unjust enrichment, "applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment." *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009) (citing *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987)). Conversely, where the unjust enrichment claim involves subject matter "not covered by a valid, enforceable contractual obligation," that claim is not duplicative of a contract breach claim and need not be dismissed. *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 305 (E.D.N.Y. 2010).

Here, in conclusory fashion, Defendant alleges that Plaintiff "has been unjustly enriched, to the detriment of Trackforce," and that "[i]t would be unjust for Counterclaim Defendant to retain the benefits of these amounts." (ECF No. 33-3 at ¶¶ 54-55.) Neither party contests the validity of the Commission Agreement itself, but rather Defendant avers that Plaintiff has breached the Agreement by engaging in prohibited "side deals." *See SP Aircraft Owner*, 637 F. Supp. 2d at 196 (rejecting a claim for unjust enrichment because "the Leases and Maintenance Agreement constitute express agreements, and [Plaintiff] does not contend that they are not valid and enforceable.")  In effect, the proposed counterclaim for unjust enrichment is premised upon the very same conduct that forms the basis for the breach of contract claim. An unjust enrichment claim is simply not available where it is merely duplicative of another claim, meaning when two claims "arise from the same facts and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008). Indeed, courts will dismiss an unjust enrichment claim that is "premised on the same factual allegations as those supporting [a] plaintiff's other claims…". *Cooper v. Anheuser-Busch, LLC*, 553 F.Supp.3d 83,

115 (S.D.N.Y. 2021) (collecting cases dismissing unjust enrichment claims that overlapped with other claims).

Accordingly, Defendant's unjust enrichment claim is futile and leave to amend to add that claim is denied.

    c.  <u>Fraud</u>

A cause of action for fraud under New York law requires "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009); *Levy v. Young Adult Institute, Inc.*, 103 F. Supp. 3d 426, 444 (S.D.N.Y. 2015) (applying the fraud factors to defendant's claims).

Here, Defendant avers that Plaintiff entered into side deals with clients in order to artificially inflate the value of contracts. (*See* ECF No. 33-3 at ¶ 46.) For instance, in June of 2024, Plaintiff supposedly entered into a "side deal" with a client ("JG") where Plaintiff represented that "the monthly total amounts would be based upon 8 locations with 1,000 employees," resulting in an ARR of $300,000. (*Id.* at ¶¶ 14, 16.) Following Plaintiff's termination, another Trackforce employee informed JG of the upcoming software change in accordance with Plaintiff's original representations. (*See id.* at ¶¶ 15, 17.) However:

> [W]hen Trackforce attempted to begin the implementation procedure, JG was confused. Trackforce reminded the client that it had signed a contract for payroll software at eight (8) locations and one thousand (1,000) employees, to which the client responded: "[Plaintiff] wanted to lock in costs if [the client] had decided to change processors. Further review of Counterclaim Defendant's email communications with the client revealed that [Plaintiff] had promised the Client— without approval from Trackforce and without Trackforce's knowledge—that the agreement they were signing would not actually obligate the client to the contract terms but would instead give the client "8 new lots to utilize at zero setup and was only to ensure that you are not hit with any of these [costs] for future openings should they occur.

(*Id.* at ¶¶ 19-20.)

Plaintiff allegedly knew that by artificially inflating the value of his contracts to Trackforce, he would, in essence, be artificially increasing the amount of commission owed to him by Trackforce under the Commission Agreement. (*Id.* at ¶ 47.) Defendant contends that Plaintiff knew Trackforce "would not actually collect the ARR set forth in the contracts" and that Plaintiff "intended that Trackforce rely on the artificially inflated value of the contracts in calculating commissions." (*Id.* at ¶¶ 48-49; *see id.* at ¶¶ 25-26 (alleging Plaintiff knew that the inflated ARR amounts would never materialize)). Consequently, Defendant maintains that it "did rely on the contract terms" that Plaintiff represented to it, subsequently paying inflated commission "based upon these representations." (*Id.* at ¶ 50.)

Defendant has stated a plausible counterclaim for fraud. Plaintiff made material misrepresentations to Trackforce, namely by misrepresenting the number of employees and locations on a contract—information that formed the entire basis of the ARR and thus the commission Plaintiff was owed by Trackforce. (*See* ECF No. 33-1 at ¶¶ 7-9); *see also Bigsby v. Barclays Cap. Real Est., Inc.*, 298 F. Supp. 3d 708, 717 (S.D.N.Y. 2018), *aff'd*, 841 F. App'x 331 (2d Cir. 2021) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 (2d Cir. 1999)) ("A misrepresentation is material to a fraud claim only if it is the type of misrepresentation likely to be deemed significant to a reasonable person considering whether to enter into the transaction."). Moreover, Defendant adequately alleges that Plaintiff knew of the falsity of the statements being made. Knowledge of falsity is demonstrated when the individual making the statement "kn[ew] [the statement] to be untrue or made [the statement] with reckless disregard for the truth." *See Great Lakes Reinsurance (UK) SE v. Herzig*, 764 F. Supp. 3d 164, 186 (S.D.N.Y. 2025) (quoting *McCormack v. IBM*, 145 F. Supp. 3d 258, 268 (S.D.N.Y. 2015)). Indeed, the interaction between

JG and Trackforce's subsequent employee confirmed that Plaintiff entered into the "side deal" under terms drastically different and false than what Plaintiff represented to Trackforce.

Additionally, Defendant properly alleged Plaintiff's intent to induce reliance as evidenced by Plaintiff's knowledge that "Trackforce would not actually collect the ARR as set forth in the contracts." (ECF No. 33-3 at ¶ 48); *see Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176 (2d. Cir. 2015). Further, Defendant's allegations of the pattern of contracts Plaintiff used to inflate revenue constitute strong circumstantial evidence of conscious misbehavior or recklessness, which demonstrates a strong inference of fraudulent intent. *See Travelex Currency Servs., Inc. v. Puente Enters., Inc.*, F. Supp. 3d 385, 398 (S.D.N.Y. 2020).

In addition, Defendant sufficiently alleged that it justifiably relied on Plaintiff's representations considering Plaintiff was an employee of Defendant who was routinely eligible for commissions on sales of payroll software and Defendant acted within its bounds by paying commissions based on the ARR values that Plaintiff reported. (*See* ECF No. 33-3 at ¶¶ 5-6.) Lastly, Defendant alleged that it incurred damages in excess of $33,000 by overpaying Plaintiff for commissions on the basis of his purported misrepresentations and did not receive money that they were expecting for the contracts Plaintiff alleged he executed. (*See* ECF No. 33-3 at ¶ 29); *see also McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, No. 1:22-CV-1138-GHW, 2022 WL 18027555, at *8 (S.D.N.Y. Dec. 30, 2022) (finding damages sufficiently alleged due to lost royalties where plaintiffs entered a contract on the basis of material misrepresentations).

Defendant's allegations satisfy Rule 9(b)'s heightened pleading standard as well. To make out a claim for fraud, a party must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard "whereby a plaintiff bringing a claim for fraud must plead facts with particularity." *Reddicks v. 38 Robin Ct. LLC*, No. 23-cv-2773 (LDH) (MMH), 2025 WL 964057,

at *3 (E.D.N.Y. Mar. 31, 2025). Ordinarily, this standard requires fraud claims to "(1) detail the statements (or omissions) that the [party] contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). A failure to meet this heightened standard by clear and convincing evidence will result in the dismissal of a fraud claim. *See Merrick Gables Ass'n v. Town of Hempstead*, 691 F. Supp. 2d 355, 361 (E.D.N.Y. 2010) (dismissing fraud claim where vague allegations of misrepresentations and fraudulent conduct "well short of meeting 9(b)'s particularity requirements").

Here, Defendant details eight separate occasions involving allegedly fraudulent contracts Plaintiff entered into for significant ARR sums, the parties to the contract, the date of entry, and whether Defendant received any revenue from the contract. (*See* ECF No. 33-3 at ¶ 26(a)-(h)); *see also Ross Prods. Div. Abbott Lab'ys Inc. v. Saper*, No. CV 06-3264, 2007 WL 1288125, at *4 (E.D.N.Y. Apr. 26, 2007) (holding plaintiff met 9(b)'s requirements when the proposed amended complaint included details about "the alleged misrepresentation, the author, and the setting"). Moreover, as detailed above, each element of fraud is pled with a sufficient level of factual support for the Court to infer that fraud exists. *See Meisel v. Grunberg*, 651 F. Supp. 2d 98, 120-21 (S.D.N.Y. 2009).

The inquiry doesn't end there as the Court must consider whether the fraud claim is duplicative of the breach of contract claim.  Is it by now axiomatic that under New York law, "[a] cause of action alleging fraud does not lie where the only fraud claim relates to a breach of contract . . . .". *Geo Grp., Inc. v. Cmty. First Servs., Inc.*, 11-CV-1711 CBA, 2012 WL 1077846, at *7 (E.D.N.Y. Mar. 30, 2012) (quoting *MTA v. Triumph Adver. Prods., Inc.,* 116 A.D.2d 526

(App. Div. 1986)) (quotation marks omitted). For a fraud claim to survive alongside a breach of contract count, a plaintiff must show (1) "a legal duty separate from the duty to perform under the contract," (2) "a fraudulent misrepresentation collateral or extraneous to the contract," or (3) that "special damages . . . are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996); *see FPP, LLC v. Xaxis US, LLC*, 765 Fed. App'x 92, 94 (2d Cir. 2019). "A fraud claim may be considered collateral to a contract if the contract, including its representations and warranties, does not address the factual bases of the fraud claim." *FPP*, 765 Fed. App'x at 94 (citing *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 417 (2d Cir. 2006)).

Here, Defendant's fraud claim is based on the representations and statements Plaintiff made to Trackforce whereby Plaintiff artificially inflated the value of his contracts, irrespective of the terms of the "side deals." (*See* ECF No. 33-1 at ¶¶ 46-47.) Artificially inflating the values of his contracts had the direct effect, as Defendant avers, of inducing Trackforce to calculate the commissions paid to Plaintiff based on these reported contracts and subsequently pay Plaintiff a larger commission than what Plaintiff would have collected had he reported the terms of his "side deals." (*See id.* at ¶¶ 47-50; *see also id.* at ¶¶ 12-13 ((alleging Plaintiff entered into side deals so that the customers would not pay the contracted for amounts and with the intent and knowledge that the inflated sales numbers submitted to Trackforce would never amount); ¶ 50 ("Trackforce did rely on the contract terms as set forth by [Plaintiff] and Trackforce paid [Plaintiff] commission amounts based upon these representations."). Consequently, Defendant contends that it "suffered damages as a result of [Plaintiff's] conduct." (*Id.* at ¶ 51.)

The facts underlying Defendant's fraud counterclaim are distinct from those underlying the breach of contract counterclaim. Namely, the fraud counterclaim focuses on the statements

made to, and subsequent inducement of, Trackforce which led to Trackforce paying increased commission amounts to Plaintiff (*see id.* at ¶ 47), whereas the breach of contract counterclaim focuses solely on Plaintiff making "side deals" to customers in violation of the Commission Agreement. (*See id.* at ¶ 34.) Under these circumstances, the fraud claim is not duplicative of a breach of contract claim. *See Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, 723 F. Supp. 3d 212, 228 (E.D.N.Y. 2024) (collecting cases where allegedly fraudulent misrepresentations were made irrespective of the terms of the contract and thus allowed a fraud claim to stand alongside the breach of contract claim).

      Accordingly, Defendant's counterclaim for fraud is not futile.

      d.  <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

      Under New York Law, there is an implied covenant of good faith and fair dealing attendant to all contracts. *See Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995) ("Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance"); *see also 511 West 232nd Owners Corp v. Jennifer Realty Co*., 773 N.E.2d 496, 500 (N.Y. 2002). To state a claim for breach of this covenant, a plaintiff must plead that: (1) the defendant owes the plaintiff a duty to act in good faith and conduct fair dealing, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages. *Great Lakes Reinsurance (UK) SE v. Herzig*, 413 F. Supp. 3d 177, 183 (S.D.N.Y. 2019) (cleaned up) (citation omitted). "Broadly stated, the implied covenant 'embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract'" *Singh v. City of New York*, 217 N.E.3d 1, 5 (N.Y. 2023) (quoting *Jennifer Realty Co.*, 773 N.E.2d at 500); *see also Burton v. Label, LLC*, 344 F. Supp. 3d 680, 696 (S.D.N.Y. 2018) (noting the implied covenant encompasses "any promises which a

reasonable person in the position of the promisee would be justified in understanding were included.") (citation omitted).

However, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim is also pled based on the same facts." *Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 223 (S.D.N.Y. 2010), *aff'd*, 453 Fed. App'x. 108 (2d Cir. 2012) (summary order). It follows, therefore, that "[a] claim for a breach of good faith and fair dealing survives a motion to dismiss 'only if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract.'" *DeSimone v. Select Portfolio Servicing, Inc.*, 748 F. Supp. 3d 136, 177 (E.D.N.Y. 2024) (quoting *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (applying New York law)). Indeed, "[u]nder New York law, claims for breach of the implied covenant of good faith which seek to recover damages that are intrinsically tied to the damages allegedly resulting from the breach of contract must be dismissed as redundant." *Davis v. ODN I GmbH*, No. 24-cv-01463 (MMG), 2025 WL 964891, at *5 (S.D.N.Y. Mar. 31, 2025) (referencing *Casalino Interior Demolition Corp. v. Custom Design Data, Inc.*, 653 N.Y.S.2d 35, 36 (App. Div. 2d Dep't 1997)).

Where duplicative, the breach of the implied covenant of good faith and fair dealing claim will be dismissed whereas the breach of contract claim will survive. *See Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (holding that "because the facts underlying both [breach of contract and breach of the implied covenant] claims are identical and the [plaintiff] seeks identical remedies, the claim for breach of the implied covenant was properly dismissed as duplicative"); *see also Beck v. Metropolitan Bank Holding Corp.*, 747 F.

Supp. 3d 442, 463-64 (E.D.N.Y. 2024) (Choudhury, J.) (dismissing claim for breach of the implied covenant of good faith and fair dealing when found to be duplicative of the contract claim).

Here, Defendant contends by engaging in conduct to artificially inflate the values of the contracts he was selling, and accepting commissions based on artificially inflated contract amounts, Plaintiff was acting "inconsistent with the reasonable expectations of the contracting parties." (ECF No. 33-3 at ¶¶ 39-41.) Though the circumstances forming the basis for this counterclaim—the acceptance of inflated commissions from Trackforce—are distinct from the conduct underlying the breach of contract counterclaim, the damages sought are not. In fact, Defendant contends that it suffered damages of approximately $33,900 based on overpayments of commissions, damages that also formed the basis for its non-futile breach of contract claim. (*See id.* at ¶¶ 29-30, 35.) Though Defendant, in its implied covenant counterclaim, asserts that it "suffered damage as a result of [Plaintiff's] conduct" (ECF No. 33-3 at ¶ 43), nowhere does Defendant allege, nor can the Court ascertain, how those stated damages are distinguishable than those suffered under its breach of contract counterclaim.

Accordingly, because Defendant fails to adequately differentiate the requested relief between the breach of the covenant of good faith and fair dealing counterclaim and the breach of contract counterclaim, the implied covenant of good faith and fair dealing counterclaim is futile. *See Davis*, 2025 WL 964891, at *5 (dismissing a breach of covenant of good faith and fair dealing claim where damages under that cause of action were "intrinsically tied to" the damages requested for under a breach of contract claim).

## CONCLUSION

For the foregoing reasons, Defendant Trackforce's Motion to Amend (ECF No. 33) is

**GRANTED in part**, in that Defendant's counterclaims for breach of contract and fraud shall be

allowed in the Amended Answer, and **DENIED in part** in that Defendant's counterclaims for

unjust enrichment and breach of the implied covenant of good faith and fair dealing are to be

excluded. Defendant shall file its Amended Answer by **July 14, 2025**.

Dated:  Central Islip, New York.
        July 1, 2025

                               **SO ORDERED**,

                           /S/ *James M. Wicks*
                               JAMES M. WICKS
                     United States Magistrate Judge