**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

ANEES KHAN,

      *Plaintiff*,

  -against-

K1 INVESTMENT MANAGEMENT LLC;
TRACKFORCE, INC., *a subsidiary of*
*Trackforce Top. Co. doing business as*
TRACKFORCE VALIANT,

      *Defendants*.
-------------------------------------------------------------------X

FILED
CLERK
12/9/2025
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM**
**AND ORDER**

2:24-cv-07860 (JMW)

**A P P E A R A N C E S:**

  Vincent F. Gerbino
  **Bruno Gerbino & Soriano, LLP**
  445 Broad Hallow Road, Suite 220
  Melville, NY 11747
  *Attorney for Plaintiff*

  Saranne E. Weimer, Esq.
  **S. Weimer Law, LLC**
  101 Crawfords Corner Road
  Holmdel, NJ 07733
  *Attorney for Defendants*

**WICKS**, Magistrate Judge:

This is a dispute over unpaid commissions pursuant to a Commission Agreement that Plaintiff contends he was owed during his employment at Defendant Trackforce and following his termination on September 5, 2024. With the end of discovery near, the parties now sharply contest whether two non-parties—Defendant Trackforce's former Chief Executive Officer, Trevor Campion ("Campion"), and former Chief Revenue Officer, Jeff Mills ("Mills")—should be directed to appear for depositions or whether as "apex witnesses" they should be excused.

1

Plaintiff Anees Khan ("Plaintiff" or "Khan") commenced the underlying action asserting claims for breach of contract, fraud and conspiracy to commit fraud, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and violations of state and federal labor laws against Defendant K1 Investment Management LLC ("K1") and Trackforce, Inc. ("Trackforce") (collectively "Defendants") to collect upon the unpaid commissions Plaintiff contends he was owed under the terms of the parties' Commission Agreement. (*See generally* ECF No. 44.) The parties are before the Court on Defendants' motion for a protective order to preclude Plaintiff from deposing Campion and Mills. (*See generally* ECF No. 48.) Plaintiff opposes. (*See* ECF No. 49.) For the following reasons, Defendants' motion (ECF No. 48) is **GRANTED**.

## BACKGROUND

Plaintiff commenced this action seeking damages for the harm he suffered after Defendants allegedly failed to pay Plaintiff his owed commissions under the parties' Commission Agreement, a document detailing how an employee's commission is calculated. (ECF No. 44 at ¶¶ 6-7, 17.) On August 5, 2024, Defendants' Chief Revenue Officer, Chris Schwartz ("Schwartz") supposedly changed the Sales Commission Plan unilaterally—a change to which Plaintiff neither signed nor agreed. (*See id.* at ¶ 8.) Indeed, Plaintiff avers that each time an earnings schedule was amended or changed, Defendants were required to, but did not, have Plaintiff and similarly situated employees sign that amendment. (*Id.* at ¶ 15.) As Plaintiff contends, after seeing the commissions owed to Plaintiff in arrears, Defendants terminated Plaintiff on September 5, 2024 following Plaintiff's complaint about the unpaid commissions. (*Id.* at ¶¶ 6, 8.) Following his termination, Plaintiff demanded all commissions earned within five

business days of termination be remitted in accordance with his statutory rights, but Defendants declined. (*Id.* at ¶¶ 11, 14.)

The parties now sharply contest whether Campion and Mills should be produced for depositions. Defendants argue that Campion and Mills "were not involved in the day-to-day management of Plaintiff and have no unique or specialized information pertaining to this matter" thereby making these depositions "unnecessary, redundant, harassing, and improper 'apex' depositions from high-level individuals . . . ." (ECF No. 48 at p. 2.) Additionally, Defendants raise that Campion's and Mills' tenure at Trackforce pre-dated the issues in dispute. (*Id.* at pp. 4-5.)

Plaintiff contends that Campion and Mills have "exclusive and exhaustive" first-hand knowledge of Plaintiff's hiring, performance, issuance of stock options, commission reports, and the effect that non-payment of commissions have had on Schwartz's performance bonuses. (ECF No. 49 at pp. 1-2). Plaintiff points to Defendants' counterclaims for fraud and breach of contract as further support for justifying their depositions.[1]

## DISCUSSION

"Parties seeking cover from discovery may avail themselves of a motion for a protective order which, in effect, is the flip side of a motion to compel." *C.K. through P.K. v. McDonald*, 345 F.R.D. 262, 268 (E.D.N.Y. 2023). Rule 26(c) affords protection for abusive or embarrassing discovery, providing that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending ... The court may, for good cause,

---

[1] Plaintiff claims that Defendants' "request lacks standing to be brought" since Defendants' counsel, Ms. Weimer, does not represent these individuals and Campion and Mills are not employed by Defendants. (*Id.* at pp. 1, 4.) It is clear from the submissions that Defendants' counsel, Ms. Weimer, in fact, represents Campion and Mills as non-parties. (ECF No. 48 at p. 1 ("This firm represents Defendants . . . and non-party movants Jeff Mills and Trevor Campion"); *see* ECF No. 48-1, Weimer Decl. at ¶ 1 ("I am . . . counsel for Defendants . . . as well as Jeff Mills and Trevor Campion . . . .")) Accordingly, the "lack of standing" argument lacks merit.

3

issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed. R. Civ. P. 26(c)(1); *see Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016) ("[T]he touchstone for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause."). The burden is on the party seeking issuance of the order to show "good cause" through "particular and specific facts" as opposed to "conclusory assertions." *Rofail v. United States*, 227 F.R.D. 53, 54–55 (E.D.N.Y. 2005). "If the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order." *Id.* at 55. "Because of the interest in broad discovery, the party opposing the discovery of relevant information, whether through a privilege or protective order, bears the burden of showing that based on the balance of interests the information should not be disclosed." *Fowler-Washington v. City of New York*, No. 19-CV-6590 (KAM)(JO), 2020 WL 5893817, at *3 (E.D.N.Y. Oct. 5, 2020) (internal quotation and citation omitted).

"Highly-placed executives are not immune from discovery." *Hallmark Licensing LLC v. Dickens Inc.*, No. 17-CV-2149 (SJF) (AYS), 2018 WL 6573435, at *4 (E.D.N.Y. Dec. 13, 2018) (citation omitted). Nonetheless, "[b]ecause of the possibility of business disruption and the potential for harassment, courts give special scrutiny to requests to depose high-ranking corporate and governmental officials, who are sometimes referred to as 'apex witnesses.'" *Chevron Corp.*, 2012 WL 1896932, at *1. "When determining whether the deposition of a high-ranking corporate executive should be allowed, however, plaintiffs have no burden to show that deponents have any relevant knowledge." *Markowitz v. Precipart Corp.*, No. 20-CV-5033 (GRB) (JMW), 2022 WL 1508638, at *2 (E.D.N.Y. Apr. 15, 2022) (citing *Hallmark*, 2018 WL 6573435, at *4).

In considering whether a high-ranking official should be deposed, courts look to "the likelihood that the individual possesses relevant knowledge, whether another source could provide identical information, the possibility of harassment, and the potential disruption of the business." *Hallmark*, 2018 WL 6573435, at *5; *see Chevron Corp.*, 2013 WL 1896932, at *1 (permitting the defendant's deposition of the plaintiff's CEO despite harassment concerns because there was "little doubt that [the CEO] has relevant knowledge," even if his knowledge was not necessarily unique). Under this framework, Campion and Mills should not be required to appear for their respective depositions at this stage for the following reasons.

*First*, at this juncture, there has been no showing that Campion and Mills possess actual knowledge sufficient to require them to sit for depositions. The relevant events giving rise to the litigation—the unilateral amendment to the Commission Agreement—occurred on August 5, 2024. (*See* ECF No. 48 at ¶ 8.) In addition, Plaintiff was terminated on September 5, 2024 and did not receive the statutorily mandated commissions by September 10, 2024. (*Id.* at ¶ 8, 11, 22, 24.) Nevertheless, Mills left Trackforce in April of 2024 for a CRO position with another entity and Campion left Trackforce in May of 2024 to pursue a Chairman and CEO position with another corporation. (*See* ECF No. 48 at pp. 4-5.) Even while employed at Trackforce, Defendants contend that Campion did not directly supervise Plaintiff, nor was he involved in Plaintiff's daily job functions. (ECF No. 48 at p. 4.) Similarly, Defendants posit that Mills does not have specialized knowledge concerning Plaintiff nor does Mills have specific knowledge of Plaintiff's purported deals in this case. (*Id.* at p. 5.)

Plaintiff, meanwhile, asserts conclusory statements as to Campion and Mills' involvement with Plaintiff himself. Specifically:

> Mr. Campion and Mr. Mills have first-hand knowledge of the Commission Schedules, Unpaid Commissions, contracts bound, Mr. Khan's performance, and

5

> K-1 Investment involvement with other Defendants. Mr. Campion and Mr. Mills were the authorities of Trackforce Valiant; have direct knowledge of the monthly review process; reviewed reports; financing; awarding of K-1 shares; EBITDA and the effect unpaid commissions have on the earnings.

(ECF No. 49 at p. 3 ("Mr. Trevor Campion and Mr. Jeff Mills have first-hand knowledge of how Commissions were earned, contracts drafted and signed, records reviewed, approved, and compliance achieved with the law.")).

Nowhere does Plaintiff demonstrate specific interactions, dealings, or communications between Plaintiff and Campion and/or Mills. Rather, Plaintiff vaguely references the parties' "pre-argument discussion" and Plaintiff's "deposition of October 28, 2025" as the source of its knowledge that Campion and Mills have this knowledge. (*See id.*) In addition, while Plaintiffs aver that Campion's deposition is required because he had knowledge of the Commission Agreement and because he awarded Plaintiff stock, such an argument is neutralized by Defendants' willingness to stipulate to the Agreement's authenticity. (*See* ECF No. 48 at p. 4.) Similarly, though Plaintiff maintains that Mills' deposition is necessary because he signed the Commission Agreement, Defendants offer to stipulate to its authenticity. (*See id.* at p. 5.)

Plaintiff offers no documents, emails, texts, transcripts, correspondence, or other evidence that identify either Campion or Mills as percipient witnesses to justify their depositions at this stage. *See Markowitz*, 2022 WL 1508638, at *2 (permitting an apex witness deposition where plaintiff established she "directly communicated with [the apex witness] in person and via email on multiple occasions" in addition to "one-on-one meetings/conversations with [the apex witness], to which only [the apex witness] could testify"); *see also Ayrton Capital LLC v. Bitdeer Techs. Grp.*, No. 24-cv-5160 (LJL), 2025 WL 1745680, at *2 (S.D.N.Y. June 24, 2025) (denying the protective order where plaintiff demonstrated the apex witness was personally involved with plaintiff in the subject matter underlying the action coupled with "[d]ocuments already in the record [that] reflect [the witness's] involvement" in the complained of conduct). Nor do the

allegations in the Amended Complaint mention any involvement from Campion or Mills, let alone cite to misconduct occurring during their tenure at Trackforce. *See Khan v. City of New York City*, 757 F. Supp. 3d 327, 339 (E.D.N.Y. 2024) (granting protective order where, *inter alia*, plaintiff's complaint contained "no allegations tying" the potential witnesses to the misconduct at issue).

During oral argument, Plaintiff's counsel raised for the first time that Defendants' counterclaims for fraud and breach of contract make both Campion and Mills material non-party witnesses. Defendants' counterclaims are based on Plaintiff's alleged entry into "side deals" with customers in violation of the Commission Agreement and for purposes of "inflating the amount of commissions paid to him." (ECF No. 45 at ¶¶ 10-12, 22, 25.) As such, Plaintiff contends that Campion and Mills were few of the many members responsible for issuing stock and approving fraudulent commissions to Plaintiff. While it appears that some of the alleged side deals occurred during Campion and Mills' tenure at Trackforce (*see id.* at ¶ 26), the counterclaims themselves do not provide a scintilla of evidence that Campion, Mills, or any other C-level executives for that matter were specifically involved in the side deals, signed-off to the exact side deals cited in the counterclaims, directly paid Plaintiff the allegedly fraudulent payments, or had knowledge that Plaintiff was the specific recipient of these fraudulent commissions.[2]

*Au fond*, without any specific proof or evidence of Campion and/or Mills' involvement in the conduct at issue, the Court is not persuaded that there is a likelihood that they possess knowledge sufficient to require them to sit for depositions. *See Shiber v. Centerview Partners LLC*, No. 21-cv-3649 (ER), 2023 WL 3071554, at *3 (S.D.N.Y. Apr. 25, 2023) (finding the apex doctrine applicable when the executive "was not involved in the decision" at issue in the lawsuit

---

[2] Defendants' counsel also represented at oral argument that neither Mills nor Campion would be called as witnesses at trial.

nor did the executive "[]ever speak with [plaintiff] while she was employed by [defendant]"). Indeed, Campion and Mills are more akin to "the prototypical apex witness who sits in the figurative skybox, far removed from the scene of the dispute with no unique knowledge or involvement in the underlying conduct." *Oakley v. MSG Networks, Inc.*, No. 17-cv-6903 (RJS), 2024 WL 4859024, at *3 (S.D.N.Y. Nov. 21, 2024) (finding the apex doctrine "plainly applicable" where the potential deponent "had a courtside seat to the action" and was "alleged to have been a participant in the conduct at issue").

This is unlike the "apex" or "high-ranking" witnesses who were directed to appear for their depositions given their connection in some way to the conduct at issue. *See, e.g., Markowitz*, 2022 WL 1508638, at *2; *Felder v. Warner Bros. Discovery, Inc.*, No. 23 Civ. No. 08487 (AT) (GS), 2025 WL 1718098, at *20 (S.D.N.Y. June 20, 2025) (directing apex witness to appear for its deposition where plaintiff established the witnesses' "personal knowledge of facts relevant to the claims and defenses" by virtue of meetings, events, and internal complaints, coupled with the witnesses' "longstanding relationship with [plaintiff]"); *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 123 (S.D.N.Y. 2015) (directing the apex witness to appear for his deposition considering the witness was "an engaged executive and has a role in, and deep understanding of, staffing structures" and "involvement in restaurant-level management" all of which formed the basis for the underlying dispute).

*Second*, the generalized information referenced by Plaintiff and sought from Campion and Mills can be obtained from other sources, contrary to Plaintiff's contention. (*See* ECF No. 49 at p. 3.) In fact, Defendants have already produced Trackforce's current CRO, Chris Schwartz, for a deposition which is scheduled to resume on December 11, 2025. (ECF No. 48 at p. 5.) Schwartz's conduct is detailed throughout the pleadings, thereby making Schwartz a material

witness and source of the information relevant to Plaintiff's case on issues of Trackforce's processes, policies, business records, and the commission disputes in this litigation. *See Harapeti v. CBS Television Stations Inc.*, No. 21 MISC. 680 (PAE), 2021 WL 3932424, at *2 (S.D.N.Y. Sept. 2, 2021) ("Under [the Apex Witness] doctrine, unless the executive has unique evidence, personal knowledge of the claims at issue, and other witnesses are incapable of providing testimony about the conduct alleged, executives are safeguarded from depositions.") (quotations and citation omitted).

Likewise, Plaintiff has already deposed Joanne Kiamos (Trackforce's former HR employee), Don Clay (Trackforce's former Senior Director of Financial Planning & Analysis), and Mike White (Trackforce's former Director of Sales), in addition to having conducted part of Plaintiff's deposition. (ECF No. 48 at p. 2.) Plaintiff has not even deposed the CEO of Trackforce at the time of the alleged misconduct, but now seeks to depose the *former* CEO who left before the relevant events in this case. *See Mark Anthony International SRL v. Prime Hydration, LLC*, No. 24 Civ. 7620 (PAE), 2025 WL 2055998, at *3 (S.D.N.Y. July 23, 2025) (granting motion for a protective order precluding the deposition of an apex witness who was "likely to yield no incremental benefit above the depositions of alternative (and more readily available) witness").

Oddly, neither K1 Investments nor Trackforce have been noticed for 30(b)(6) depositions. Schwartz appeared for his deposition in his personal capacity and not as a 30(b)(6) witness. At bottom, party depositions should be completed before proceeding to depositions of non-parties. *See Bonano v. Tillinghast*, No. 18-CV-6405 (FPG), 2021 WL 1117027, at *2 (W.D.N.Y. Mar. 24, 2021) (denying the motion to serve deposition subpoenas upon non-parties with leave to renew after the named defendants have been deposed based on interests of judicial

economy and conserving parties' expenses); *Delgado v. Trump*, No. 19 Civ. 11764 (AT) (KHP), 2024 WL 1604260, at *2 (S.D.N.Y. Apr. 11, 2024) (information received through party depositions should inform the decision on what is sought through third-party depositions).

The end date of all discovery in this action is February 20, 2026 which provides the parties ample opportunity to designate 30(b)(6) witnesses, complete party depositions, and reassess whether Campion's and Mills' depositions are still necessary. Under these circumstances no basis exists to require Campion and Mills to be deposed at this time. Should facts be revealed later through party depositions or other discovery that Mills or Campion are indeed material percipient witnesses, then Plaintiff at that time may move for reconsideration to take their depositions.

## CONCLUSION

For the reasons stated above, Defendants' motion for a protective order (ECF No. 48) is **GRANTED** without prejudice to Plaintiff's right to move for reconsideration after party depositions have been completed if those depositions or other evidence can connect Mills or Campion to the claims, defenses, or counterclaims.

Dated:    Central Islip, New York
          December 9, 2025

S O   O R D E R E D:

/S/ *James M. Wicks*
    JAMES M. WICKS
    United States Magistrate Judge